*Formatted for Electronic Distribution*                                                                                                              *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
December 23, 2015

**In re:**
    **Philip Nardini**                                                                                          Chapter 13
        **Debtor.**                                                                                          Case # 15-10244

*Appearances:*  Rebecca Rice, Esq.                                                    Andrew S. Cannella, Esq.
                      Cohen & Rice                                                              Bendett & McHugh, P.C.
                      Rutland, Vermont                                                     Farmington, Connecticut
                      *Attorney for the Debtor*                                           *Attorney for Objecting Creditor*

**MEMORANDUM OF DECISION**
**ON THE CREDITOR-MORTGAGEE'S OBJECTIONS TO CONFIRMATION**

       Phillip Nardini (the "Debtor") filed for relief under Chapter 13 of the Bankruptcy Code after defaulting on his home mortgage payments. The Debtor filed a motion for mortgage mediation with U.S. Bank, National Association, the current holder of the mortgage and note (the "Creditor") and the Court granted that motion with an order directing the Debtor and the Creditor to engage in mediation to explore whether the Debtor was eligible to modify the terms of the mortgage. The mediation is proceeding according to the process set out in this Court's Local Rules, and the Chapter 13 case is simultaneously moving forward toward confirmation of the Debtor's proposed repayment plan. The Debtor's plan proposes to pay the Creditor a monthly payment that is less than the monthly payment currently required by the mortgage note the Debtor executed at the time he acquired his residence and reflects instead the monthly payment the Debtor expects will be required once the mediation is complete and the mortgage is modified.

       The Creditor objects to the Debtor's plan, asserting that as the holder of a claim secured only by a mortgage on the Debtor's primary residence, it is entitled to the full amount of the mortgage payment set out in the mortgage note until the Creditor modifies that note. The Creditor asserts that to confirm a plan which calls for a lower payment pending the outcome of mediation is, in effect, to "modify" the mortgage note as of the plan confirmation date, in violation of the Bankruptcy Code and Local Rules.

The Trustee and the Debtor oppose the Creditor's objection. They assert that authorizing the Debtor to make a reduced payment while mediation is ongoing, and confirming a plan with a payment that is contingent upon the outcome of mediation, neither modifies the terms of the mortgage note nor violates the rules governing Chapter 13 plans.

## ISSUE PRESENTED

The legal question underlying the instant dispute is whether the Debtor's plan, which proposes a reduced monthly payment to the Creditor pending the outcome of Court-directed mortgage mediation, constitutes a modification of the Creditor's rights, in contravention of 11 U.S.C. §§ 1322(b)(2)[1] and the Court's Local Rules. The Creditor alleges it does while the Debtor and Trustee assert it does not.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares the dispute arising from the Debtor's request for confirmation of his Chapter 13 plan and the Creditor's objection to that plan is a core matter under 28 U.S.C. § 157(b)(2)(A) and (L), over which this Court has constitutional authority to enter a final judgment.

## PROCEDURAL HISTORY AND UNDISPUTED MATERIAL FACTS

On June 22, 2015, the Debtor filed a Chapter 13 plan which provided for treatment of his creditors' claims contingent upon the Debtor and Creditor reaching an agreement regarding the modification of the Debtor's home mortgage loan through loss mitigation mortgage mediation (doc. # 26, the "Plan"). Shortly thereafter, the Debtor filed a motion for mediation with the Creditor (doc. # 34), to which the Creditor did not object. On July 17, 2015, the Court entered an order granting that motion (doc. # 35). On August 24, 2015, the Creditor filed an objection to confirmation of the Plan, alleging the Plan failed to account for Creditor's pre-petition mortgage arrears, understated the amount of the current monthly mortgage payment, and failed to specify how the Debtor would address the mortgage debt if mediation did not result in a loan modification (doc. # 38, the "Objection"). At the confirmation hearing held on October 23, 2015, the Debtor testified and the Court confirmed the Plan subject to the parties' reaching an agreement as to language to be inserted in the confirmation order specifying the steps the Debtor would take in the event the mortgage mediation did not result in a loan modification, and as to the remaining open issues. The Court set a continued hearing on November 6, 2015, to be held only if the parties were unable to resolve the Objection.

---

[1] All statutory citations herein refer to Title 11 United States Code (the "Bankruptcy Code") unless otherwise indicated.

2

The parties did not file a consensual proposed confirmation order so the hearing went forward on November 6, 2015. The Creditor argued the Plan effectively proposed to modify a mortgage debt secured only by the Debtor's principal residence in violation of § 1322(b)(2). It also argued the proposed treatment of its claim violated the Local Rules. In further support of its position that the Debtor should be required to make the full monthly payment required by the mortgage note (the "Note") pending the outcome of mediation, the Creditor pointed to the fact that there was an unusually large arrearage ($82,064.27) in this case, and based upon the amount of its secured claim ($233,986.03) and the value of the property ($135,000, according to the Debtor's schedules), its mortgage claim was significantly undersecured as of the petition date.

The Debtor argued the Plan was not modifying the home mortgage debt but rather proposing provisional treatment of the mortgage debt pending the outcome of the mortgage mediation process. He emphasized that since he would be making reduced payment only for an interim period his Plan did not violate the Bankruptcy Code. The Debtor also asserted this approach is consistent with a rational reading of the Local Rules and complies with the mortgage modification procedure which has proved extremely successful in this District. The Trustee agreed with the Debtor, stating that if the Court were to hold that proposals for an interim hiatus in full monthly mortgage payments violated the prohibition against modification of home mortgage notes, mediation would be far less valuable, and debtors would no longer have the opportunity to obtain plan confirmation prior to the conclusion of the mortgage mediation procedure – to the detriment of both debtors and creditors.

To implement the ruling the Court made at the November 6th hearing, on November 9, 2015, the Court entered a scheduling order (i) directing the Creditor to file a more detailed objection to the Plan incorporating all arguments it had put on the record to date, with a memorandum of law to support those arguments; (ii) setting a deadline by which the Debtor and Trustee would file responsive memoranda of law; (iii) directing the parties to continue the mediation process; and (iv) setting a continued confirmation hearing for December 18, 2015 (doc. # 50).  The parties filed the memoranda of law referenced in that scheduling order and the matter is fully submitted.

### DISCUSSION

The parties' positions have not changed since the Plan and Objection were filed but they have been more finely tuned through the briefing process.  In its amended objection to confirmation of the Debtor's plan (doc. # 52, the "Amended Objection"), the Creditor articulates the following arguments.[2]

---

[2] In its Amended Objection, the Creditor concludes with a request that the Court both deny confirmation and dismiss the case. However, the Creditor has not filed a motion to dismiss, and therefore, the Court limits its analysis to the objection to confirmation.

3

First, the Creditor posits the Debtor's filing of a Chapter 13 case, when he knew no plan would be feasible unless he obtained a loan modification, constitutes bad faith under subsections 1325(a)(3) and (7). Second, the Creditor asserts the Plan fails to comply with the Local Rules of this Court which require the Debtor to make the full monthly mortgage payments due under the note whenever the debtor was in default on their mortgage obligations as of the petition date.  Third, it argues that under § 1322(b)(2) and the Supreme Court's decision in Nobelman v. American Sav. Bank, 508 U.S. 324 (1993), the Debtor is prohibited from modifying the Creditor's right to be paid the principal and interest set out as the monthly installment payment in the Note.

*1.  The Bad Faith Argument*

The Creditor has not set out any factual or legal support for its bad faith argument based upon the contingent nature of the  Debtor's Plan.  While the Bankruptcy Code requires that a plan be feasible in order to be confirmed, see § 1325(a)(6), plans may be found feasible even if they are contingent on future events, the most common being the sale of property as long as the sale appears reasonable.  See In re Turner, 207 B.R. 373, 376 (B.A.P. 2d Cir. 1997) (debtor may fund a plan through a post-confirmation sale of property); see In re Erickson, 176 B.R. 753, 756 (Bankr. E.D. Pa. 1995) ("Sale plans do not per se modify secured creditors' rights; they merely delay immediate payment to creditors in consideration for what is often accelerated full payment."). It is not unreasonable to rely upon a mortgage modification and the Creditor has not argued the monthly payment the Debtor proposes in the Plan is unreasonable or is not reasonably based upon the Debtor's application of the HAMP Guidelines to his current financial circumstances.

The Creditor has also failed to cite any case which holds that a plan dependent upon some future event is de facto filed in bad faith.  This is not surprising since an assessment of bad faith must be based on the totality of the circumstances.  See In re French, No. 01-10603, 01-1058, 2003 WL 21288644 at *4-5 (Bankr. D. Vt. May 30, 2003). Courts inquire whether the debtor displayed "honesty of intention" and whether the debtor has "misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed the plan in an inequitable matter."  See In re Johnson, 708 F.2d 865, 868 (2d Cir. 1983); In re Hutchins, 400 B.R. 403, 410-11 (Bankr. D. Vt. 2009); see also In re Plagakis, No. 03-CV-0728(SJ), 2004 WL 203090 at *4 (Bankr. E.D.N.Y. Jan. 27, 2004) (setting forth circumstances under which courts have found bad faith in Chapter 13 cases, none of which are the filing of a plan dependent upon loan modification). The totality of circumstances presented here does not include any evidence that the Debtor filed the Plan in bad faith, and the Creditor has not indicated it could demonstrate acts warranting a finding of bad faith in an evidentiary hearing.

4

The Creditor seeks a bad faith finding premised solely on the Debtor's filing of a plan which requires a loan modification in order to be feasible. That is legally insufficient to establish bad faith. Accordingly, the Court overrules the bad faith aspect of the Amended Objection.

*2. The Local Rules Argument*

The Creditor's second argument is that the Plan's failure to include full monthly mortgage payments each month post-petition violates the Vermont Bankruptcy Local Rules (the "Local Rules") and renders the Plan unconfirmable. Local Rule 3015-2(j)(3)(B) requires debtors who are in default on their mortgage payments as of the date they filed their bankruptcy petition to file a "Conduit Mortgage Payment Plan," that is to say, a plan under which the debtor makes their ongoing monthly mortgage payments through the Chapter 13 Trustee. See Vt. LBR 3015-2(j)(2)(D). These mortgage payments made through the Trustee are called "conduit mortgage payments" ("CMPs"). As a general rule, Chapter 13 debtors who seek to modify their mortgage were in arrears on the bankruptcy filing date, and hence, are subject to the CMP requirement. Since the Debtor was in default on his bankruptcy filing date, he is subject to the CMP rule. It is this rule which the Creditor asserts the Plan violates. In particular, the Creditor asserts that the following subparagraphs of the CMP rule explicitly require the Debtor to make the full, regular monthly mortgage payments set out in the Note post-petition, unless and until the Creditor modifies the Note.

**Vt. LBR 3015-2. CHAPTER 13 – CONFIRMATION**

…

**(j) Conduit Mortgage Payments.**

    (2)    **Definitions.** For purposes of this Rule, the following terms have the stated meanings:

        …

        (C)    A "Conduit Mortgage Payment" is the Regular Monthly Mortgage Payment <u>the debtor is obligated to pay to the Mortgage Creditor post-petition</u>, which the Chapter 13 trustee disburses pursuant to the terms of this Rule.

        …

        (L)    A "Regular Monthly Mortgage Payment" is the sum of the principal, interest, taxes, insurance, administrative fees, and any other charges properly escrowed, charged, or <u>assessed under a note and secured by a properly perfected mortgage on the debtor's residential real property</u>, which is due each month.

Vt. LBR 3015-2(j) (emphasis added). The Creditor asserts that based upon these definitions and requirements, the Debtor must make the full monthly mortgage payment every month the case is pending post-petition, and a plan which fails to do so does not meet the criteria for confirmation.

This position, though facially persuasive, is flawed. First, the CMP program is distinct from the loss mitigation mediation program (the "Mediation Program"). The Local Rule governing the Mediation Program, Vt. LBR 4001-7, as supplemented and modified by Standing Orders ## 13-05 and 15-02, is silent on the issue of the amount of the debtor's monthly mortgage payment while parties are engaged in mediation. Ultimately, however, local rules cannot modify the requirements or mandates of the Bankruptcy Code. See Fed. R. Bankr. P. 9029. Thus, the Court overrules this second prong of the Creditor's objection as moot since the Court's ruling on whether the Debtor's plan meets the requirements for confirmation under §1325 will control.

*3. The § 1322(b) Argument*

The Creditor's primary argument is that the Plan impermissibly modifies its rights as a holder of a claim secured only by a security interest in the Debtor's principal residence, by allowing the Debtor to temporarily make monthly mortgage payments in an amount less than what is required by the Note. The Creditor insists this treatment of its claim violates the mandates of the Bankruptcy Code and precludes confirmation of the Plan. The applicable statute provides:

> § 1322 - **Contents of plan**
> …
>   (b) Subject to subsections (a) and (c) of this section, the plan may—
>     …
>     (2)   modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u>, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 1322(b) (emphasis added). This raises the fundamental question as to what it means to "modify" rights. There is no case law in this District, and neither party has cited case law from other districts, addressing the question of whether a temporary reduction in the monthly mortgage payment amount, contingent on the outcome of ongoing mediation, constitutes a modification of rights prohibited by § 1322(b)(2).

The Court finds that the Creditor's anti-modification argument fails for three reasons: (a) the Creditor has failed to present any case law to support a finding that a temporary adjustment of the monthly mortgage payment actually constitutes a modification of the Creditor's rights under the Note; (b) the Creditor has failed to demonstrate an equitable basis for interpreting § 1322(b)(2) in the manner it advocates; and (c) the Creditor has failed to show its interest is not adequately protected by the treatment of its claim set forth in the Plan.

*(a) A temporary adjustment of the monthly mortgage payment is not a modification of the Note.*

Although there is no federal case law directly on point in Vermont, this District has recognized conditional confirmation orders in the context of whether such orders are "final orders" for purposes of appeal. In <u>GMAC Mortgage, LLC v. Orcutt</u>, the U.S. District Court for the District of Vermont acknowledged that Chapter 13 plans may be confirmed contingent upon certain events that will occur in the future. No. 5:13-CV-82, 2013 WL 3830496, at *4-5 (D. Vt. July 22, 2013). The Trustee argues that because the District Court's analysis in <u>Orcutt</u> recognizes the legitimacy of plan terms which depend on a future reconfiguration of rights between a debtor and mortgagee, it supports the Debtor's position that the Plan does not modify the Creditor's rights. The relevant excerpts of that analysis are as follows:

> Here, the bankruptcy court specifically conditioned confirmation of the Plan as being "subject to the outcome of the appeal of the" adversary proceeding. (Doc. 1–5 at 81.) …
>
> …
>
> *5 Here, the Plan is contingent upon GMAC's mortgage being adjudicated invalid in the adversary proceeding. The bankruptcy court explicitly made confirmation of the Plan subject to the appeal of that proceeding.

<u>Orcutt</u>, No. 5:13-CV-82, 2013 WL 3830496, at *4-5. Although not dispositive, the Court finds the <u>Orcutt</u> rationale relevant to the instant dispute. The <u>Orcutt</u> reasoning reflects the reality of Chapter 13 practice, which often involves plans that propose treatment of certain creditor's claims contingent upon, for example, the sale of property, adjudication of an adversary proceeding (often to determine the nature, extent or validity of an asserted security interest), or resolution of a contested matter (frequently an objection to claim). The <u>Orcutt</u> rationale acknowledges this type of interim claim treatment without questioning its validity. It describes a procedural landscape in which Chapter 13 plans temporarily adjust the treatment of a secured creditor's claim contingent upon a future determination of the parties' respective rights.

Another recent case in this Circuit which addresses the intersection between mortgage mediation efforts and plan confirmation, albeit for determination of yet a different issue, is <u>In re Morales</u>. 506 B.R. 213 (Bankr. S.D.N.Y. 2014). In that case, the debtors had filed an objection to the creditor's claim with a request that the claim be reduced to reflect the terms of the agreement granting the debtors a temporary loan modification. Judge Morris found the debtors' temporary trial modification payments, made as a condition of obtaining a permanent loan modification, did not alter the original loan terms or modify the mortgagee's rights under the subject promissory note. See 506 B.R. at 219. The <u>Morales</u> court affirmed the practical reality that some debtors feel the need to seek confirmation of a plan, which includes temporary mortgage payments subject to the outcome of loss mitigation mediation, prior to the execution

7

of a permanent modification agreement, due to delays in receiving a permanent modification agreement from their lenders. See id. The court concluded that under the Home Affordable Modification Program ("HAMP") Guidelines and the New York state court's loss mitigation program, the debtors' temporary trial modification agreement was not an agreement to modify the creditor's secured claim – and did not alter the creditor's rights – because there were multiple conditions that needed to be satisfied before a permanent modification would be effectuated. See id. It further declared a mortgagee's underlying secured claim is valid until the date of a permanent modification agreement between the debtor and mortgagee. See id. Finding the conclusions of the Morales case applicable and persuasive authority, this Court finds the Note is not modified until a permanent agreement is reached between the Debtor and Creditor regarding the terms of the Note, which is not likely to happen until the parties complete their mediation.

Vermont law also supports this conclusion. This District's Mediation Program is founded on the Vermont state court's program, both of which follow the same HAMP Guidelines that were construed in the Morales decision. They require debtor-borrowers to make all of the trial plan payments as a condition to receiving a permanent loan modification. In applying the HAMP Guidelines, the Vermont state courts have specifically held that borrowers who make all of the temporary trial payments "are entitled to a permanent loan modification agreement that modifies their loan obligation as agreed to in the trial period plan and in compliance with the HAMP guidelines." See BAC Home Loans Servicing v. Bogar, No. 19-1-09, 2010 WL 5774599 (Vt. Super. Oct. 6, 2010)(emphasis added). This underscores the distinction between the status of the loan during the time payments are being made pursuant to the temporary plan, and the status of the loan once a permanent modification is granted.

In looking at the actual language of § 1322(b)(2), the Court observes there is nothing that affirmatively bars a bankruptcy court from entering a confirmation order that permits a debtor an interim period of time to pursue a potential loan modification, and in the meantime, allows a temporary reduction in the monthly mortgage payment corresponding to what the Debtor believes is due under applicable federal regulations.

Based upon the jurisprudence of state and federal courts, and the language of the pertinent statute, as well as the clear articulation in the Plan that the Plan is contingent upon a successful outcome in mediation, the Court finds the Plan does not cause any actual modification of the Creditor's rights, constitute a permanent modification of the contract between the parties, or modify the Debtor's obligations under the original loan agreement, as is prohibited by § 1322(b)(2).

*(b) Neither the purpose of the statute nor the equities presented support the Creditor's position.*

Even assuming <u>arguendo</u> that a temporary adjustment to the monthly mortgage payment amount might fall within the ambit of treatment prohibited by § 1322(b)(2), such an interpretation is not compelled by the case law and cannot be imposed unless it is necessary to comport with the purpose of the statute or satisfy the equitable demands of this particular case. The Bankruptcy Court is a court of equity, <u>Pepper v. Litton</u>, 308 U.S. 295, 304 (1939), and Chapter 13 reorganization is intended to be an efficient procedure leading individuals in financial distress to, <u>inter alia</u>, a fresh start which includes the curing of mortgage arrears and reinstatement of their home mortgage. <u>See</u> <u>Harris v. Viegelahn</u>, 135 S. Ct. 1829, 1835 (2015). These premises must underlie any conclusion the Court makes in interpreting a statute that may be construed in more than one way.

Since the mortgage debacle and resulting financial crisis in 2008, loss mitigation mortgage mediation programs have been instituted both in and out of court proceedings, and in both state and federal courts. This has led to millions of home owners modifying their mortgages, reaching agreements that include more reasonable repayment terms, retaining their homes, and resuming monthly payments – with the corollary benefit of mortgagees converting non-performing loans into performing loans. As of October 2015, there were more than 2.5 million successful loan modifications, including both home retention scenarios on the one hand and completed short sales and deeds-in-lieu of foreclosure outcomes on the other.[3] This District, like dozens of others in the country, instituted its Mediation Program to expedite the process of eligible debtors obtaining mortgage modifications, which, in turn, has resulted in an increase in the number of successful Chapter 13 plans in this District.[4]

This Court cannot relieve the Debtor of his obligation to comply with the anti-modification provision set out in § 1322(b)(2). The Court must, however, discern the scope of that obligation based on the purpose of that statute. <u>See</u> <u>Law v. Siegel</u>, 134 S. Ct 1188, 1194 (2014). The clear mandate of § 1322(b)(2) is that Chapter 13 plans must pay creditors who made a loan secured solely by the debtor's primary residence, according to the terms of the mortgage note.[5] The clear mandate of other federal law is that certain homeowners are entitled to a modification of the terms of their home mortgage, and certain lenders are required to respond to requests for such modifications of residential mortgage loans

---

[3] <u>See</u> DEPT. OF TREASURY, MONTHLY REPORT TO CONGRESS NOVEMBER 2015, http://www.treasury.gov/initiatives/financial-stability/reports.

[4] <u>See</u> attached chart, produced by the Administrative Office of U.S. Courts, showing the success rate of Chapter 13 plans in Vermont compared to that of other bankruptcy courts in the Second Circuit and nation, with success being measured by the number of Chapter 13 cases that are closed with a discharge (rather than conversion or dismissal). It reflects a consistent increase since the date the Court implemented its loss mitigation mediation program.

[5] A creditor may waive this requirement and consent to other treatment, pursuant to 11 U.S.C. § 1325(a)(5)(A), but the Creditor in this case has not done so.

9

according to a prescribed process (the HAMP Guidelines).[6] The Debtor believes he is eligible for a modification of his home mortgage under the HAMP Guidelines and has obtained an order requiring the Creditor to engage in the Mediation Program to ascertain, with the assistance of a court appointed mediator, if in fact he is. This Court must take into account both mandates in determining whether the Plan satisfies the requirements of § 1322(b)(2), and seek to find a way these two statutes may work in harmony, for the benefit of the Chapter 13 estate.

As a general principle, the purpose of § 1322(b)(2) is to distinguish the treatment of home loans from other debts and prohibit any "cram down" of loans secured solely by a debtor's primary residence. The Debtor's pursuit of HAMP relief, through a simultaneous mortgage mediation process (under the Court's supervision), does not intrude at all into the protection of the Creditor's rights under the Note. It imposes only a temporary reprieve from the obligation to make full payments pending a determination whether the amount of those temporary payments is sufficient to comply with the HAMP Guidelines. It does not cram down the debt or in any way change the terms of the agreement between the parties. If mediation fails, the Creditor has all the rights it had on the date the petition was filed.

The Creditor's right to be protected from cramdown and modification of the terms of its Note, under § 1322(b)(2), is unequivocally and conspicuously met by the Plan. This is underscored by the Debtor's affirmation that confirmation of the Plan would be subject to the outcome of mediation and would not have a "res judicata effect on the Creditor's secured claim" (doc. # 55, p. 2) and his commitment to include that protective language in the confirmation order. This will preserve all of the Creditor's rights until the mediation is completed and demonstrate the alignment of the Plan with the purpose underlying § 1322(b)(2).

*(c) The Creditor's interest is adequately protected by the Debtor's Plan.*

Additionally, the Plan adequately protects the Creditor's security interest position. See § 361. In order to satisfy this criterion, and obtain plan confirmation prior to the conclusion of mediation, the Debtor must demonstrate the Creditor's position is adequately protected by the proposed plan payment. Although the term "adequate protection" is not defined by the Bankruptcy Code, it has been generally interpreted to require that the creditor receive sufficient payments such that, in light of the collateral it holds and the nature of its interest, its financial position is not eroding. See Bluebird Partners, L.P. v. First Fidelity Bank N.A., 85 F.3d 970, 972 (2d Cir. 1996). That determination must be made on a case by case basis.

---

[6] See 12 U.S.C. § 5219a; MAKING HOME AFFORDABLE HANDBOOK v. 4.5 (2015), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_45.pdf.

At the November 6th hearing, the Creditor argued that the Court should use its equitable powers to find the proposed payment modifies the Creditor's rights since its claim was significantly undersecured as a result of the Debtor's default and not adequately protected by the Plan. This argument is unavailing because adequate protection is not available to remedy defaults or circumstances which arose pre-petition, but rather to prevent the creditor's position from deteriorating from what it was as of the petition date.  See In re Armenakis, 406 B.R. 589, 620 (Bankr. S.D.N.Y. 2009). If, as here, the Debtor makes a payment sufficient to include the interest and any escrow charges reasonably expected to be due on the principal amount that will be outstanding under the modified loan (using the HAMP Guidelines), it satisfies the adequate protection test.

The Creditor has not asserted the interim payments the Debtor has computed and proposed will impair the position it was in on the filing date. Based upon the record, it appears the proposed payments adequately protect the Creditor's interest during this interim period and are sufficient, pending the outcome of mediation.

*Additional Arguments*

The Creditor also argues that the Debtor's plan fails to accurately compute the administrative arrearage and fails to specify how its claim will be treated if mediation fails (doc. # 52).

The first of these arguments is premature in light of the pending mediation, and therefore will be denied without prejudice. Once the mediation is complete, the parties, in consultation with the Chapter 13 Trustee should be able to compute the proper amount of the administrative arrearage, if any. If they are unable to do that, the Creditor may re-assert this objection and the Court will address it at that time.

The second of these arguments has merit and will be sustained. The Court will require in this case, as it does in all cases where confirmation is granted subject to mediation, that the confirmation order compel the Debtor to file a motion to modify his plan within 14 days of the conclusion of mediation if the mediation results in payment terms different from those set forth in the plan.

## CONCLUSION

Based upon the foregoing analysis, the Court reaches the following conclusions of law. The Court overrules the Creditor's objection to the Plan based upon the Plan's temporary reduction in the amount of the monthly mortgage payment, pending the outcome of mortgage mediation, impermissibly modifies the Creditor's claim in violation of § 1322(b)(2).  The Court also overrules the Creditor's objection that the Plan's payments to the Creditor in an amount less than the regular monthly payment under the Note fails to comply with the Local Rules. The Court additionally overrules the Creditor's

objection that the Debtor's Plan, which is contingent upon a successful mortgage modification mediation, was filed in bad faith.

The Court sustains the Creditor's objection based upon the Debtor's failure to specify how the Creditor's claim will be treated if mediation results in a monthly payment different than is in the Plan. The confirmation order must require the Debtor to modify the Plan within 14 days of the completion of mediation, if the mediation does not result in an agreement permitting the Debtor to make the payment proposed in the Plan.

Finally, the Court overrules, without prejudice, the Creditor's objection that the Debtor has failed to properly compute the administrative arrearage in the Plan. If, at the conclusion of the mediation, there is still a dispute as to the amount of the administrative arrears that must be paid under the Plan, the Creditor may re-assert this objection at that time.

Accordingly, the Chapter 13 Trustee may file a proposed confirmation order at this time, consistent with terms this memorandum of decision.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

December 23, 2015  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

# Bankruptcy Statistics: Vermont

**Select district from drop-down menu below:**

Vermont

- Total Bankruptcy Filings
- Bankruptcy Filings Per Judgeship
- Adversary Filings Per Judgeship
- Weighted Filings Per Judgeship
- Chapter 7 Filings (% of Total Filings)
- Chapter 13 Filings (% of Total Filings)
- Business Filings (% of Total Filings)
- Pro Se Filings (% of Total Filings)
- Median Chapter 7 Disposition (Months)
- Median Chapter 13 Disposition (Months)
- **Percent of Chapter 13s Closed by Discharge**

County-Level Filing Data, 2006-15



**Percent of Chapter 13s Closed by Discharge**

12-Month Periods Ending September 30

● VT   ◆ 2nd   ✶ US

|            | 2011 | 2012 | 2013 | 2014 | 2015 | % Chg., 2014-15 |
|------------|------|------|------|------|------|-----------------|
| VT         | 73.8 | 74.6 | 76.2 | 84.5 | 87.3 | 3.3%            |
| 2nd Circuit| 45.8 | 48.7 | 54   | 57   | 57.5 | 0.9%            |
| US         | 36   | 38.3 | 44.6 | 51.1 | 55.6 | 8.8%            |

*Circuit Rank: 1   U.S. Rank: 1*